**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN D. SOSA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 1:25-cv-09617** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **THE COUNTY OF DUPAGE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# ORDER

Plaintiff Jonathan Sosa brings this action pursuant to 42 U.S.C. §1983 against the County of DuPage, the Sheriff of DuPage County, and a DuPage County Sheriff's officer, Christopher Jordan, alleging that his constitutional rights were violated when he was beaten by Jordan, another unnamed DuPage County Sheriff's officer, and Cary Police Department officers. Now before the Court is the motion to dismiss, (Dckt. #31), filed by the County of DuPage and the Sheriff of DuPage County (collectively, the "moving defendants").[1] For the reasons explained below, the Court grants the moving defendants' motion.

## I. BACKGROUND

The Court draws the following facts from plaintiff's second amended complaint, (Dckt. #25). On September 11, 2024, Sosa obtained a copy of a court order dismissing an order of protection against him (presumably filed by his ex-wife) in the McHenry County Court. (*Id*. at 2). He then notified the Cary Police Department of this dismissal order and informed both the Cary Police and his landlord that he intended to go to his former residence to collect his belongings. (*Id*. at 3).

When Sosa arrived at his former residence, he encountered defendant Jordan (who also had a prior relationship with Sosa's ex-wife). (*Id*.). Sosa introduced himself to Jordan and explained that he was there to pick up his things. (*Id*.). Jordan then "got off the couch and began to chase Sosa around the house," at which point Sosa started recording the incident on his cell phone. (*Id*.). Jordan called 911 and "announced to the 911 operator that he was a DuPage County Sheriff's officer and that someone was attempting to break into his house." (*Id*. at 4). Jordan then verbally and physically assaulted Sosa in front of his young son. (*Id*.).

Eventually, officers from the Cary Police Department arrived, at which point Jordan again announced that he was an off-duty DuPage County Sheriff's officer. (*Id*.). According to

[1] Plaintiff erroneously named the "Sheriff's Department of the County of DuPage" instead of the Sheriff of DuPage County.

Sosa, after Jordan got off of him "he felt 5 people around and over him," felt over 6 blows to his right liver and kidney areas, and he was tased. (*Id*. at 4–5). He woke up in an ambulance being interrogated and accused of breaking into his home. (*Id*. at 5).

According to Sosa, at all relevant times, Jordan was acting under color of law. (*Id*. at 4). In his second amended complaint, Sosa alleges that the moving defendants' failure to train or supervise Jordan resulted in his constitutional injuries.[2] The moving defendants now seek to dismiss the claims against them pursuant to Rule 12(b)(6). Separately, Jordan has answered the complaint.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint that satisfies this standard is 'well-pleaded' and may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (cleaned up); *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (recognizing that the "notice-pleading standard is deliberately undemanding") (cleaned up). As such, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it. *Berk*, 607 U.S. at 193.

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). "[T]he burden of persuasion lies with the moving party . . . to show entitlement to dismissal." *Teva Pharm. USA, Inc. v. Eli Lilly & Co.*, 181 F.4tth 756, 767 (7th Cir. 2026) (cleaned up). Moreover, the Court is required to draw all reasonable inferences in favor of plaintiff, and it cannot draw inferences in favor of the moving defendants. *See, e.g.*, *Teva*, 181 F.4th at 767–68 (reversing Rule 12(b)(6) dismissal where the district court improperly drew inferences against the plaintiff and in favor of the defendant). And, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

## III. DISCUSSION

The moving defendants seek dismissal, arguing that: (1) Jordan was not acting under color of law at any point during the incident; (2) the County cannot be held responsible for Jordan's actions because the County does not have authority to form or oversee a police or sheriff's office and Jordan is an employee of the *Sheriff* rather than of the County; (3) Sosa has

[2] The Village of Cary and the Village of Cary Police Department were once named as defendants but have been dismissed from this matter. (Dckt. #15).

not plausibly pleaded a *Monell* claim against the Sheriff; and (4) Jordan was not acting within the scope of his employment. In response, (Dckt. #33), Sosa only meaningfully responds to defendants' first and third arguments. Specifically, he contends that Jordan *was* acting under color of law, particularly because he announced himself as a Sheriff's officer to the 911 dispatcher and the Cary officers who arrived on the scene. Sosa further argues that he has stated a claim for failure to train, or in the alternative, that he should be permitted to engage in limited discovery to obtain more information supporting his failure to train claim.[3]

### A. DuPage County Cannot Be Held Liable for Jordan's Actions as a Matter of Law.

To begin, Sosa did not respond to DuPage County's argument that it cannot be held liable for Jordan's actions as a DuPage County Sheriff's Deputy because Jordan is not a DuPage County employee. As such, he has waived any opposition to DuPage County's argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). In any event, DuPage County is correct on this point as a matter of law. *See DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 (7th Cir. 2000) ("[W]e have held that Illinois sheriffs are not county employees."); *Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) ("This argument overlooks a crucial third possibility that we have found to be dispositive in other cases – namely, that the sheriff is an agent of the county sheriff's department, an independently elected office that is not subject to the control of the county in most respects."). Accordingly, DuPage County is dismissed.

### B. Sosa Has Failed to Plausibly Plead a Claim Against the Sheriff of DuPage County.

Section 1983 provides a civil remedy against any "person" who violates a plaintiff's federal civil rights while acting under color of state law, and a municipality (such as the Sheriff of DuPage County) is a person who may be sued under Section 1983. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (citing *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 690 (1978)); *Smith v. Mendrick*, No. 19-cv-07319, 2021 WL 4318081, at *2–5 (N.D.Ill. Sept. 23, 2021) (Sheriff of DuPage County is a proper defendant under Section 1983). "Municipalities may be sued only for their own violations of federal law, however, and cannot be held vicariously liable for the constitutional torts of their employees." *Thomas*, 74 F.4th at 523.[4]

---

[3] Sosa also attaches an affidavit to his response which, as he correctly notes, the Court *can* consider. (Dckt. #33 at 1–2). However, because Sosa's affidavit simply reiterates the allegations of his complaint, which the Court must already accept as true at this stage, the affidavit does not shed any further light on Sosa's claim.

[4] For this reason, the parties' dispute regarding whether Jordan was acting within the scope of his employment is irrelevant to the resolution of this motion because that issue relates to the concept of *respondeat superior*.

To state a claim under *Monell*, a plaintiff must plead facts that plausibly suggest that: (1) it was deprived of a constitutional right;[5] (2) the deprivation can be traced "to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the moving force behind the federal-rights violation." *Id.* at 524 (cleaned up).

Here, Sosa seeks to hold the Sheriff liable based on a "failure to train" theory. In particular, Sosa alleges that the Sheriff failed "to properly train and supervise its officers in managing their roles while they are off-duty and in their homes." (Dckt. #25 ¶31). According to Sosa, this failure to train caused Jordan to take a number of steps, including: (a) announcing that he was an off-duty DuPage Sheriff's Deputy when he made a 911 call to the Cary Police Department; (b) not allowing Sosa to get his son's attention to let him into the premises; (c) not allowing Sosa to peaceably enter the premises; (d) not accepting Sosa's representation that the court had dismissed the order of protection against him; and (e) physically assaulting and beating Sosa after Sosa entered the premises.[6] (*Id.*).

As the Supreme Court has held, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (noting that "failure-to-train liability is rare"). "A municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy." *Flores*, 997 F.3d at 733. As such, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, *quoting Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

Sosa's complaint falls far short of pleading a plausible failure to train theory of liability against the Sheriff. Specifically, he fails to allege: (a) any other similar constitutional violations caused by the alleged failure to train; (b) how the training provided by the Sheriff was deficient and how the deficiency caused his injuries; and (c) what sort of training the Sheriff should have provided. *Id.*; *Herrington v. Bradford*, No. 3:20-CV-00938-NJR, 2023 WL 6276041, at *4–5 (S.D.Ill. Sept. 26, 2023); *Petropoulos v. City of Chicago*, No. 19-CV-03206, 2021 WL 1103480, at *8–9 (N.D.Ill. Mar. 23, 2021); *Carmona v. City of Chicago*, No. 15-CV-462, 2018 WL 306664, at *3–4 (N.D.Ill. Jan. 5, 2018); *see also McCauley v. City of Chicago*, 671 F.3d 611, 616–18 (7th Cir. 2011). Instead, Sosa offers up the type of generic, boilerplate allegations based on a single experience that courts have repeatedly rejected. *See, e.g.*, *Petropoulos*, 2021 WL 1103480, at *8–9; *Petropoulos v. City of Chicago*, 448 F.Supp.3d 835, 842–43 (N.D.Ill. 2020).

---

[5] The Court presumes for purposes of this motion that Jordan violated Sosa's constitutional rights while acting under color of law.

[6] Sosa also alleges in passing that the Sheriff "failed to maintain an early warning system to identify problem officers who were likely to engage in future misconduct," (Dckt. #35 ¶31), but this conclusory allegation, on which Sosa did not elaborate in his response brief, is insufficient to provide factual support for Sosa's *Monell* claim.

Sosa also requests leave to perform limited pre-dismissal discovery to learn about the training that Jordan received from the Sheriff. (Dckt. #33 at 5). Although this Court has discretion to grant such discovery, *see McCauley*, 671 F.3d at 619–20, the Court respectfully declines to do so. It is unclear what discovery Sosa could obtain regarding the Sheriff's "role in training its off-duty officers," (Dckt. #33 at 6), because the Sheriff has denied that it provides its off-duty deputies with any training about how they should behave during what they perceive as a home invasion. (Dckt. #31 at 13). Moreover, as Sosa acknowledges, he can obtain discovery about the training Jordan received from Jordan himself. Accordingly, the Court will not defer its decision on the moving defendants' motion until after Sosa initiates discovery.

In sum, for the reasons stated above, the Court grants the moving defendants' motion to dismiss, (Dckt. #31). Sosa may seek leave to file a third amended complaint solely to the extent he can do so consistent with the terms of this Order, Rule 11, and any further scheduling order issued by the Court.

**Date: September 30, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**